**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION**


**DEBBIE BROWN**                                                                    **PLAINTIFF**

**V.**                                                  **CAUSE NO.: 3:09-CV-00436-DPJ-FKB**

**JACKSON MUNICIPAL AIRPORT AUTHORITY**                          **DEFENDANT**


**PLAINTIFF'S BRIEF IN SUPPORT OF RESPONSE TO DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT WITH SUPPORTING AUTHORITIES**

COMES NOW, the Plaintiff, Debbie Brown, by and through counsel and serves this

her Brief in Support of Response to Defendant's Motion for Summary Judgment, and

would show the Court the following:

**I.    BACKGROUND FACTS**

Plaintiff, Debbie Brown, began her employment with Defendant as a

accounts payable finance technician on March 7, 2003. [Doc. 41-2 at pp. 66-67 and

Doc. 41-9 at p. 2]. In her position, Mrs. Brown worked closely with Marcus Betts (African

American), who was a payroll/revenue/accounts receivable technician, and Ricco

Owens (African American), who is employed as the balance sheet/fixed assets

technician. [Doc. 41-9 at p. 2].  Due to the small size of the Defendant's finance

department, each technician could have been called upon to perform duties of the other

technicians as needed. *Id.* at p. 3.

In mid-September 2007, Betts was terminated. *Id.*  Shortly after Mr. Betts

termination, Gary Cohen, who is the Defendant's Chief Financial Officer, and Arnetrius

Reed-Branson, who is the Defendant's Controller, decided to alter the minimum

requirements for Betts' former position. *Id.* While the Defendant was considering changing the qualifications for the position, Mrs. Brown performed the payroll, general ledger, accounts payable, and accounts receivable balance sheets functions of Mr. Betts' former position. [Doc. 41-2 at p. 83-84]. Ms. Reed-Branson assisted with the position as far as accounts receivable for payment applications and inputting data for the accounts receivable balance sheet. *Id.* Eventually, the minimum requirements were finalized to require a degree in accounting, and the job was posted as being available. *Id.* at p. 86. Mrs. Brown applied for the job even though she did not have a degree in accounting because her supervisor, Mrs. Reed-Branson led her to believe that the requirement did not apply to her because Mrs. Brown had already been performing the position. *Id.* at p. 87.

Around the end of October or beginning of November 2007, Mrs. Brown and Mr. Owens began discussing Mr. Bett's former position, and Mr. Owens decided that he was going to ask Reed-Branson if she had made any decisions regarding filling the position. *Id.* at p. 49, 95-96. Later Mr Owens struck up a conversation with Reed-Branson regarding the position, and Mrs. Brown was able to listen to the conversation. *Id.* During the conversation Reed-Branson informed Mr. Owens that she wanted to hire a "brother" for the position. *Id.* Reed-Branson then stated, "But I can't find one in the resumes. They're – all the ones that I've received are asking for too much compensation, and I can't pay them that much." *Id.* at p. 96.[1] At the end of this

_____

[1] There is a dispute of material fact as to this conversation as Reed-Branson denies making the "brother" comment, and Owens testified he could not say whether it happened or not. [Doc. 41-5 at p. 15 and Doc. 41-6 at p. 13-15, 21].

conversation Reed-Branson asked Mr. Owens if he was interested in the position. [Doc. 41-6 at p. 16]. Mr. Owens responded that it would depend on what the compensation would be for the position. *Id.* at p. 25. Shortly after this conversation Cohen offered Mr. Owens a 10% increase in pay if he was interested in the position. *Id.*

After receiving multiple applications, Cohen and Reed-Branson reviewed the applicants. [Doc. 41-4 at p. 10]. However, Reed-Branson was the sole individual that decided who would be selected for interviews. *Id.*[2] After Reed-Branson decided whom to interview, each candidate was brought in for a in-person interview with Reed-Branson, Plaintiff, and Owens. [Doc. 41-5 at p. 11]. The interviews started in November 2007, and around this time Reed-Branson informed Mrs. Brown that she would not be selected for interviews because she did not meet the minimum qualifications as she did not possess a degree in accounting. [Doc. 41-2 at p. 87-88].

There were only two individuals interviewed for the payroll accountant positions that was posted in 2007. *See* Affidavit of Plaintiff, attached hereto as Exhibit "A." The first applicant interviewed was Eva Perkins, who is a black female. *Id.* Ms. Perkins was in her fifties and had a bachelors degree in management. *Id.* Mrs. Brown informed Mrs. Reed-Branson that Ms. Perkins did not have a degree in accounting after Mrs. Reed-Branson had informed her that she was not selected for an interview because she did

---

[2]This is a dispute of material fact as Cohen claims in his deposition Reed-Branson made the decision as to whom to interview, and does not recall actually selecting anyone to interview. Reed-Branson, on the other hand, claims Cohen actually made the final decision as to whom to interview. [Doc. 41-5 at p. 9-10].

not have a degree in accounting. *Id.* Mrs. Reed-Branson responded by saying that it really did not matter because she was not really interested in hiring Ms. Perkins. *Id.*

The second applicant was also a black female, who had a bachelors degree in business administration. *Id.* Prior to the in-person interview the second applicant also stated during a phone interview that she had been terminated from her last job for having a physical altercation with another employee. *Id.* After the in-person interview both applicants were given an accounting test that consisted of a mixture of multiple choice and true/false questions. *Id.* Eva Perkins missed two questions, but still passed the test. *Id.* One of the questions that truly stuck out in Plaintiff's mind was "What is a liability?", which is a basic accounting question that anyone with a accounting background should know. *Id.* The second applicant missed four questions and failed the test. However, she was still being considered for the position after failing the test. *Id.*

Shortly after the applicants were given the test Mrs. Brown asked Mrs. Reed-Branson when she would be interviewed for the position. *Id.* Mrs. Reed-Branson responded that she would not be interviewed because she did not have a degree in accounting. *Id.* When Mrs. Brown questioned Mrs. Reed-Branson about how the other two applicants were given interviews even though they did not have a degree in accounting she responded that it did not matter for them. *Id.* During this same conversation Mrs. Reed-Branson showed Mrs. Brown the test results for each applicant. *Id.* When Mrs. Brown questioned Mrs. Reed-Branson as to how Eva Perkins could be considered for the position when she did not even know what a liability was, Mrs. Reed-Branson responded that it did not matter. *Id.* Mrs. Brown also asked Mrs. Reed-

Branson how the second applicant could still be considered for the position when she failed the test. *Id.* Mrs. Brown received the same response that it did not matter. *Id.*

A few days after this conversation Mrs. Reed-Branson came back to Mrs. Brown claiming the Defendant had ran another ad that did not include the accounting degree requirement to come up with a reason for why she did not get an interview. *Id.*  This was simply not true. *Id.*  Part of Mrs. Brown's job was to write checks for all accounts payable, which included paying for ads. *Id.*  Her review of the records showed the Defendant never paid for a revised ad to be run. *Id.*  After this conversation Mrs. Brown asked Mrs. Reed-Branson for a copy of the revised ad, and she responded that the human resources department could not give her one. *Id.*  Later Mrs. Reed-Branson altered her explanation again by claiming the human resources department did not actually run the revised ad, but they had intended to. *Id.*

Shortly before the Christmas holidays in 2007, Eva Perkins was selected for the position. *Id.*  Towards the end of Mrs. Brown's employment with Defendant she was considering resigning because she had been overlooked for three positions that she was qualified for during the five years she was employed with Defendant. *Id.*  She finally decided to resign on January 7, 2008, after Mrs. Reed-Branson attempted to run her over with her car in the parking lot. *Id.*  This attempt to physically injury Mrs. Brown occurred on the same day Mrs. Brown and Mrs. Reed-Branson had a heated meeting regarding Mrs. Brown's workload and being required to train Ms. Perkins even though the Defendant claimed Mrs. Brown was not qualified for the job. [Doc. 41-2 at p. 108].

## II.   STANDARDS FOR SUMMARY JUDGMENT

### A.   Summary Judgment

District courts may properly grant summary judgment only if, viewing the facts in the light most favorable to the non-movant, the movant shows that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Fed. R. Civ. P. 56(c).*

Summary judgment only shall be rendered when the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett.*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  The moving party bears the burden of identifying the basis for its belief that there is an absence of a genuine issue for trial, and pointing out those portions of the record that demonstrate such an absence.  *Id.* Once the movant has made this initial showing, the nonmoving party must present competent summary judgment evidence to show a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).  Such evidence consists of specific facts that show a genuine fact issue, such that a reasonable jury might return a verdict in the nonmoving party's favor.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  All evidence and the reasonable inferences to be drawn therefrom must be viewed in the light most favorable to the party opposing the motion.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962).

## III.   ARGUMENT

**A.   Plaintiff's Claim For Race Discrimination Under Title VII Survive Summary Judgment.**

### 1.   Plaintiff Can Show Evidence of Race Discrimination.

The "brother" comment by Mrs. Reed-Branson should be considered direct evidence of race discrimination  This comment clear shows Mrs. Reed-Branson was looking for black individual for the position because she made the comment to a black male and only selected black females to be interviewed.  Plaintiff contends that this conversation between Mrs. Reed-Branson and Mr. Owens should be considered direct evidence. *Manning v. Chevron Chem. Co., LLC,* 332 F.3d 874, 882 (5th Cir. 2003).  This "brother" comment was related to the protected class as the term "brother" is commonly used as a reference to black males.  The comment was made around the time Mrs. Branson was deciding who should be interviewed for the position, and it was made directly to reflect the race of the individual she was wanting to select.

### 2.   Plaintiff Can Show Prima Facie Case.

First, Plaintiff should not be required to show a prima facie case of discrimination as Defendant has offered an alleged legitimate non-discriminatory reason  its actions. Instead, the analysis should go directly as to whether the Plaintiff can show pretext. *Brady v. Office of the Sergeant at Arms,* 520 F.3d 490, 493-4 (D.C. Cir. 2008).  To prove a prima *facie case* of discrimination the Plaintiff must show (1) membership in a protected class; (2) that she was qualified for the job; (3) that she was subject to an

-7-

adverse employment decision; and (4) that either the position was filled by someone not in the protected class, or the person was not promoted because of her race. *Rutherford v. Harris County, Texas,* 197 F.3d 173, 179 (5th Cir. 1999); *Shackelford v. Deloite & Touche,* 190 F.3d 398, 404 (5th Cir. 1999).  Defendant does not dispute that Plaintiff can prove the first, third and fourth prongs, but claims Plaintiff cannot show that she was qualified because she did not possess a bachelors degree in accounting.  This argument by Defendant is weak at best as the individual selected, Eva Perkins, also does not have a bachelors degree in accounting. *Turner v. Honeywell Fed. Mfg. & Techs., LLC,* 336 F.3d 716, 721 (8th Cir. 2003)("a plaintiff alleging a prima facie case of failure to promote should not bear the same burden when the criteria are subjective and the process 'vague and secretive' as when the case involves 'objective hiring criteria' applied to all applicants")(citing *Thomas v. Denny's, Inc.,* 111 F.3d 1506, 1510 (10th Cir. 1997)); *Kovoor v. School District of Philadelphia,* 211 F. Supp. 2d 614, 626 (E.D. Pa. 2002)(accounting clerk satisfied summary judgment burden by demonstrating that requirement of completion of bachelor's degree was selectively applied and based on subjective preferences of supervisory employees).  The simple fact is that Mrs. Reed-Branson made exceptions to the bachelors degree in accounting requirement for the black individuals that applied for the positions.  The Defendant also claims Mrs. Brown was not qualified because she only had limited experience with the Defendant's accounts receivable/revenue process.  This argument is even weaker than the accounting degree requirement because neither of the black applicants interviewed had any experience with the Defendant's accounts receivable/revenue processes because neither of them had ever even worked for the Defendant to have any such experience.

Noticeably, the Defendant has backed off claiming Plaintiff had little accounts receivable experience as she had approximately thirty years of such experience. [Doc. 41-2 at p. 51, 54-79]. It is also notable that Defendant was interested in offering Mr. Owens the position even though he had no accounts receivable experience. [Doc. 41-6 at p. 19.]

Additionally, a plaintiff arguably has standing to challenge an employer's hiring practice even if the employer's cessation of the practice would not necessarily result in the plaintiff's hiring. In *Murphy v. Derwinski,* 990 F.2d 540 (10th Cir. 1993) the Tenth Circuit considered the claim of a woman who was denied the position of Roman Catholic chaplain at a government hospital because she was not ordained. The court held that the plaintiff had standing to challenge the ordination requirement - which excluded all women - even though she might not have been hired anyway because she also lack the church's ecclesiastical endorsement. The court held that a cognizable injury stemmed from the hospital's alleged use of a gender based criterion to reject the plaintiff's application, not from its resulting failure to hire her. *Id.* at 547.

### 3.   Plaintiff Can Show Defendant's Proffered Reasons Are Pretextual.

.     In Defendant's brief it claims its legitimate non-discriminatory reason is that Eva Perkins was more qualified that Mrs. Brown. [Doc. 41-9 at p. 12.] This alleged reason is pretextual for an assortment of reasons. The first is that the Defendant never got to a time where it was deciding between Mrs. Brown and Ms. Perkins, and decided Ms. Perkins was better qualified because Mrs. Brown was never given the chance to even interview for the position. As discussed earlier, Mrs. Reed-Branson made the sole decision as to whom to interview, and since Mrs. Brown was not selected for interviews

and testing Mr. Cohen could not have considered her in deciding on which applicant was more qualified.

The Defendant claims that there can be no finding of discrimination because Mr. Cohen, who made the final decision to hire Mr. Perkins, is white just like Mrs. Brown. First, that logic does not hold water as Mrs. Brown could not have even been considered by Mr. Cohen because she was not allowed to interview for the position, and that decision was made by Mrs. Reed-Branson. Second, the Defendant also cannot argue that it cannot be race discrimination because the alleged racist is also white.  The U.S. Supreme Court has twice frowned on this argument. In *Castaneda v. Partida*, 430 U.S. 482, 499-501 (1977), the Court rejected the assertion "that human beings would not discriminate against their own kind." In *Oncale v. Sundowner Offshore Services, Inc., et al.*, 118 S. Ct. at 1001118 S. Ct. 998 (1998), the Supreme Court again dispensed with the argument (in the context of same-sex harassment) as follows:

> . . . In the related context of racial discrimination in the workplace we have rejected any conclusive presumption that an employer will not discriminate against members of its own race. 'Because of the many facets of human motivation, it would be unwise to presume as a matter of law that human beings of one definable group will not discriminate against other members of that group.' (citation omitted).

118 S. Ct. at 1001. *See also Ross v. Douglas County*, 234 F.3d 391, 396 (8th Cir. 2000) ("we have no doubt that, as a matter of law, a black male could discriminate against another black male, because of that individual's race").  And after all, when the employer argues that its white boss would not discriminate against a white employee, is not the company asking the Court to make an assumption about the boss's behavior, based solely on her race?

Additionally, the Defendant has continually changed its reasoning for not giving Plaintiff an interview.  Mrs. Reed-Branson originally informed Plaintiff she was not selected for an interview because she did not have a bachelors degree in accounting. When Plaintiff questioned this reasoning because other black applicants without the required degree were being interviewed, Mrs. Reed-Branson originally said it did not matter and later came back to claim that the Defendant had run an altered ad for the position that did not require the accounting degree.  When Plaintiff showed her that it was not true Mrs. Reed-Branson changed her reason again to claim the Defendant had not actually ran the altered ad, but they had thought about it.  At the EEOC stage of the case the Defendant claimed that part of the reason for not selecting Plaintiff for an interview was that Plaintiff allegedly had "limited Accounts Receivable experience..." *See* Defendant's EEOC Position Statement at p. 5, attached hereto as Exhibit "B."  The Defendant knows that it is hard to claim Plaintiff's thirty years of accounts receivable experience is "limited experience," so it has altered its reasoning again at the summary judgment stage to make an even more absurd argument that Plaintiff was not selected for an interview because she had limited experience with the Defendant's accounts receivable/revenue processes.  However, it failed to consider how it would explain how the two black applicants could have such experience when they had never worked for the Defendant to have any such knowledge of any of its processes.

The fact that Mrs. Reed -Branson has tried to claim Mr. Cohen made the final decision as to whom to interview, while Mr. Cohen has testified Mrs. Reed-Branson made the sole decision, is clear evidence of pretext.  A reasonable jury could easily conclude that Mrs. Reed-Branson is lying about who decided which applicants to

interview to hide her racial discriminatory intent. There would literally be no other reason for Mrs. Reed-Branson to lie about this fact other than to pin the decision on Mr. Cohen in hopes a jury would not find a white person discriminated against another white person just as the Defendant has clearly argued to this Court.

The "brother" comment by Mrs. Reed-Branson is certainly evidence of pretext as well.  This comment clear shows Mrs. Reed-Branson was looking for black individual for the position because she made the comment to a black male and only selected black females to be interviewed.  Plaintiff contends that this conversation between Mrs. Reed-Branson and Mr. Owens should be considered direct evidence; however, if it cannot meet the burden to be considered direct evidence it should be considered evidence to show pretext.

Finally, the Defendant's continuous questionable objections in discovery and refusal to testify under oath at the EEOC stage are evidence of pretext.  In *Emmel v Coca-Cola Bottling Co. of Chicago,* 95 F.3d 627, 634-35 (7th Cir. 1996) the Seventh Circuit found that a defendant's "clever" and "legalistic" objections could be interpreted by a jury that the defendant's alleged legitimate non-discriminatory reason lacks credibility.  In response to Interrogatory No. 6, the Defendant raised eight (8) objections that a jury could reasonably interpret defendant's reasoning lacks credibility. [Doc. 41-8 at p. 6-7].  In response to Interrogatory No. 4 Plaintiff requested the Defendant to identify all EEOC charges that had been filed against it in an attempt to discover a pattern of discrimination. *Id.* at p. 5.  Defendant raised nine (9) different objections to this interrogatory, and blatantly refused to provide such relevant information.  A reasonable jury could conclude Defendant is intentionally avoiding this question

-12-

because it has a company practice of race discrimination.  The Defendant took the

same evasive tactic with answering Interrogatory No. 9 that sought to discover all race

discrimination lawsuits filed against Defendant in an effort to discovery a pattern of

discrimination. Id. at p. 11.  At footnote two (2) of the Defendant EEOC position

statement it declares,

> This response, while believed to be accurate, does not
> constitute an affidavit or binding statement of JMAA's legal
> position, nor is it intended to be used as evidence of any
> kind in any administrative or court proceeding in connection
> with Charging Party's allegations.

*See* Exhibit "B" at p. 1.  A jury could easily conclude that it is likely Defendant's alleged

reason are likely to be not true as Defendant blatantly refused to testify under oath

regarding its reasoning for its actions, and claims that it has the right to change its

reasoning any time it seems fit.

### 4.    Mixed Motives.

Even if Defendant could show that Plaintiff would not have been selected for the

position even if she had been properly considered, Plaintiff contends that she should be

allowed to pursue her claim under a mixed motive argument as Plaintiff's race was

clearly a motivating factor, at a minimum, in her non-selection. *Desert Palace, Inc. V.*

*Costa,* 539 U.S. 90 (2003).

### 5.    Constructive Discharge.

To establish a constructive discharge claim a plaintiff must establish that her

"working conditions were so intolerable that a reasonable employee would feel

compelled to resign." *Lauderdale v. Tex. Dep't of Criminal Justice, Inst. Div.,* 512 F.3d

157, 167 (5th Cir. 2007).  In order to succeed on a constructive discharge claim, the

-13-

plaintiff must show a greater degree of harassment than is required for a hostile work environment claim. *Id.* at 167.  Mrs. Reed-Branson attempting to literally run Mrs. Brown over with her car in the parking lot would certainly be considered by any reasonable person as well as most unreasonable people to be so intolerable to be compelled to resign.  The Defendant tries to argue it was not given an opportunity to remedy the situation.  This is not true.  Plaintiff was continually met with Defendant's supervisory personnel about her working conditions, and in return for continually trying to get an adequate remedy to the situation her supervisor tried to remedy the situation by attempting to run her over in the parking lot.  Certainly no reasonable would be expected to come back for another "remedy."

**6.     Punitive Damages.**

The U.S. Supreme Court has interpreted § 1981 to require proof that the employer discriminated "in the face of a perceived risk that its actions [would] violated federal law to be liable in punitive damages." *Kolstad v. American Dental Ass'n,* 527 U.S. 526, 536 (1999).  As the Defendant has explained in its brief, it has a policy against discrimination.  So if a jury where to find that the Defendant's decisions were based on race, it would be clear its actions were done with the knowledge that it was violating the law.  In response to this the Defendant claims punitive damages cannot be awarded because of its good faith efforts to comply with Title VII by having a policy in its manual prohibiting such discrimination.  This is simply not enough to avoid punitive damages. In *Deffenbaugh-Williams v. Wal-Mart Stores,* 188 F.3d 278, 285-26 (1999) the Fifth Circuit held that a store manager named Gipson "had authority to make personnel decisions regarding Deffenbaugh and other in her department and in those five other

stores. In sum, substantial evidence existed from which a jury could reasonably find that Gipson was a managerial agent, acting in the scope of employment." The court rejected the employer's good faith defense, finding there was no evidence of any actions by Wal-Mart directed at "requiring its managers to obey Title VII," or of Wal-Mart's response to the plaintiff's complaint or anything beyond a general nondiscrimination policy encouraging employees to contact higher management with grievances. The Defendant tries to claim Plaintiff did not claim specifically of race discrimination to support its argument of good faith. This is not accurate. Plaintiff specifically complained of discrimination, Defendant's implication that it would have remedied the situation if Plaintiff had just uttered the words "race discrimination" is weak at best. [Doc. 41-2 at p. 125-6, 187-188].

**CONCLUSION**

As set forth above, the Plaintiff has presented direct evidence of race discrimination and circumstantial evidence of pretext to satisfy her burden to defeat the Defendant's Summary Judgment Motion with regard to her race discrimination claim.

THIS, the 23rd day of August, 2010.

Respectfully submitted,

PLAINTIFF


By: /s Nick Norris
    Louis H. Watson, Jr. (MB# 9053)
    Nick Norris (MB# 101574)
    Attorneys for Plaintiff


OF COUNSEL:

LOUIS H. WATSON, JR.
628 N. State Street
Jackson, Mississippi 39202
(601) 968-0000
Fax: (601) 968-0010


**CERTIFICATE OF SERVICE**

I, Nick Norris,  attorney for Plaintiff do hereby certify that I have this day filed the

foregoing with the Clerk of the Court using the ECF system which sent notification of

such filing or mailed, via United States Mail, postage prepaid, on the following:

> D. Jeffrey Wagner (MSB #9451)
> Jennifer G. Hall (MSB # 100809)
> BAKER, DONELSON, BEARMAN, CALDWELL &
> BERKOWITZ
> A Professional Corporation
> 4268 I-55 North
> Meadowbrook Office Park
> Jackson, Mississippi 39211

SO CERTIFIED, this the 23rd day of August, 2010.

/s Nick Norris
Nick Norris

-16-